**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

AIC FERNANDINA, LLC d/b/a
AMELIA ISLAND COFFEE, a Florida
limited liability company,

                Plaintiff,

    v.

BLAKE F. BUCHANAN

              Defendant,

Case No. 26-cv-00514-MMH-SJH

---

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendant Blake F. Buchanan, by and through undersigned counsel, respectfully moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

The Constitution mandates "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open[.]" *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas." *Morse v. Ripken*, 707 So. 2d 921, 922 (Fla. App. 1998) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) (footnote omitted)).

The facts alleged in the pleadings demonstrate that this lawsuit is predicated not upon a statement of fact, but upon Defendant's expression of opinion. Opinion is protected by the First Amendment and cannot be the basis for liability.

1

## STATEMENT OF FACTS

This case is straightforward, and the material facts are not in dispute. Amelia Island Coffee is a coffee shop and small business located at 207 Centre Street, Fernandina Beach, Florida 32034. Complaint ¶ 6. Defendant Buchanan was present in that coffee shop on September 20, 2025. *Id.* at ¶ 11. Defendant asks this Court to take judicial notice of two contextual facts, not subject to reasonable dispute: Charlie Kirk, known conservative commentator, was murdered by a gunshot the week prior, on September 10, 2025.[1] The funeral for Charlie Kirk was widely publicized and scheduled to occur, and did occur, the day following the incident in this case, on September 21, 2025.[2] "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020). Both these facts are publicly known and cannot reasonably be disputed.

The day before Charlie Kirk's funeral, an individual entered the coffee shop wearing a t-shirt that had a design on it making it appear to be "blood spattered" with fake blood and bearing the words "Problem Solved" on the front of the t-shirt. Complaint ¶ 9. An employee of the coffee shop stopped the individual and said that she liked his shirt. *Id.* ¶ 10. As Buchanan explained later, and Plaintiff does not dispute,

---

[1] https://www.fbi.gov/news/press-releases/utah-valley-shooting-updates
[2] https://www.npr.org/sections/the-picture-show/2025/09/21/g-s1-89830/charlie-kirk-funeral-photos-trump-memorial-service

the employee specifically stated that she "loved" the shirt. *Id.* ¶ 16. After this interchange, the employee rejoined the other employees, who immediately burst into laughter. *Id.*

Defendant Buchanan then publicly commented on this interaction that he witnessed, describing what he perceived to be a celebration of Charlie Kirk's murder. Complaint ¶ 13. Specifically, Buchanan posted, "The employees of Amelia island coffee are openly celebrating Charlie Kirk's murder today." *Id.* The Complaint concedes that Buchanan provided the specific facts that were the basis for his opinion in a comment on his post, stating: "Customer walked in wearing this shirt and one of the employees stopped him and said I love your shirt. Then same employee told all of the other baristas and they all had a good laugh." *Id.* ¶ 16. The Complaint does not allege that this statement was false or defamatory. Buchanan also posted a photo of the shirt worn by the customer in the coffee shop. *Id.* The Complaint also does not allege that the image posted by Buchanan is false. *Id.*

Plaintiff made no attempt to communicate with Buchanan or demand that Buchanan remove his post. Instead, the coffee shop filed suit a few days after the incident occurred, bringing two counts for defamation and defamation per se.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(c) allows for a party, before trial, to move for judgment on the pleadings. "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001). The Court

3

accepts the facts alleged in the complaint as true and views them in the light most favorable to the nonmoving party. *Id.* In short, "[a] motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Rule 12(b)(6)." *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018). This includes the *Twombly* rule. *Id.* A plausible complaint's factual allegations "raise a right to relief above the speculative level" and "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007) (citation omitted). An "unadorned, the-defendant-unlawfully0 the-defendant-unlawfully-harmed-me accusation" is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

Plaintiff's defamation claims arise from a Facebook post in which Defendant described an observed interaction in Plaintiff's coffee shop and expressed his interpretation of that interaction amid a widely publicized and politically charged public discussion around Charlie Kirk's murder. Plaintiff's Complaint does not contest the accuracy of the facts Defendant communicated, but instead his opinion and characterization of the disclosed facts. But the First Amendment does not permit liability for statements that are, at most, subjective characterizations of disclosed events. The Complaint itself confirms that Defendant recounted the underlying facts—an employee's comment about a customer's shirt and the employees' reaction—leaving readers free to draw their own conclusions. Plaintiff's attempt to recast Defendant's interpretation as a false statement of fact fails as a matter of law. Compounding that defect, the Complaint does not plausibly allege falsity, fault, or that

the statement was "of and concerning" Plaintiff, and it improperly repackages a defective defamation claim as "defamation per se." Because the challenged speech is non-actionable and the pleading is conclusory, the Court should enter judgment on the pleadings in favor of the Defendant.

Florida law requires five elements for defamation claims: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008).

## I.   DEFENDANT'S STATEMENT CONSTITUTED CONSTITUTIONALLY AND LEGALLY PROTECTED OPINION.

The first and most fundamental problem with Plaintiff's Complaint is that under both the First Amendment and Florida Law, a statement of opinion cannot be the basis for liability.

To ensure that public debate does not suffer for lack of "imaginative expression" and "rhetorical hyperbole," the First Amendment protects from liability any statement that "cannot reasonably be interpreted as stating actual facts." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (citations omitted). To be actionable under the First Amendment, a statement must be "sufficiently factual to be susceptible of being proved true or false" based "on a core of objective evidence." *Id.* at 21. Indeed, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional

protection." *Id.* at 20. Florida law is in full accord: "pure opinion" — meaning a statement that either cannot be proven true or false, or is a characterization of disclosed facts — is categorically non-actionable. *Blake v. Giustibelli*, 182 So. 3d 881, 884 n.1 (Fla. Dist. Ct. App. 2016) ("Statements of pure opinion are not actionable."); *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. Dist. Ct. App. 1981); *see also Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15, 717 (11th Cir. 1985) (applying Florida law). These principles "reflect[] the reality that exaggeration and non-literal commentary have become an integral part of social discourse." *Horsley v. Feldt*, 304 F.3d 1125, 1131 (11th Cir. 2002).

"The determination whether a statement is fact or opinion is a question of law for resolution by the court." *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. Dist. Ct. App. 1986). "In determining whether the statement is one of pure or mixed opinion, the court must examine the words used, together with the totality of the circumstances and the context, within which it was published." *Sullivan v. Barrett*, 510 So. 2d 982, 983-984 (Fla. Dist. Ct. App. 1987).

The most important application of that basic principle in this case is that "[c]ommentary or opinion based on facts that are set forth in the article or which are otherwise known or available to the reader or listener are not the stuff of libel." *Rasmussen v. Collier County Pub. Co.*, 946 So. 2d 567, 571 (Fla. Dist. Ct. App. 2006); *accord Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. Dist. Ct. App. 1984) ("Pure opinion is protected under the First Amendment."). As the Eleventh Circuit

has emphasized, this principle is "well settled." *Turner v. Wells*, 879 F.3d 1254, 1265 (11th Cir. 2018). Under both Florida law and the First Amendment, in other words, an opinion is actionable *only* if it "implies the allegation of **undisclosed** defamatory facts as the basis for the opinion." *Stembridge v. Mintz*, 652 So. 2d 444, 446 (Fla. Dist. Ct. App. 1995); *see Turner*, 879 F.3d at 1262 (citing *From*, 400 So. 2d at 57). Where the facts are fully disclosed and not in dispute, there are no hidden defamatory facts for the characterization to imply — readers can see exactly what the speaker observed and evaluate the characterization for themselves. *Id.*

Here, Plaintiff's own Complaint defeats its claims. The Complaint quotes — verbatim, in paragraph 16 — Buchanan's comment disclosing the precise factual basis for his characterization: "Customer walked in wearing this shirt and one of the employees stopped him and said I love your shirt. Then same employee told all of the other baristas and they all had a good laugh." Complaint ¶ 16. Buchanan did not stop there; he posted a photograph of the shirt itself so that readers could see exactly what the customer was wearing on the day before Charlie Kirk's funeral. *Id.* Buchanan left no facts undisclosed. Every reader of his post had access to the same factual predicate he did and was free to agree or disagree with his characterization of what that interaction meant. The Complaint does not, because it cannot, allege that Buchanan's description of those underlying facts was false or defamatory. *Id.* ¶ 16. There are *no* undisclosed facts lurking beneath Buchanan's interpretation. The Plaintiff's Complaint has thus pleaded Buchanan's defense for him: a speaker who places his full factual predicate before the public cannot be liable for the characterization that

followed from it.

Plaintiff will likely respond by invoking *Milkovich* for the proposition that even opinions can be actionable. That argument fails here for a reason that *Milkovich* itself supplies. In *Milkovich*, a journalist authored an article suggesting that a local high school wrestling coach (Milkovich) lied under oath in a judicial proceeding concerning his actions during an altercation at a wrestling meet. Milkovich sued both the journalist and the newspaper for libel. 497 U.S. at 3. While a lower court held that the article constituted an opinion, the Supreme Court reversed. *Id*. What made the statement in *Milkovich* actionable was that the statement — i.e., that Milkovich committed perjury — is itself an "objectively verifiable assertion." *Turner*, 879 F.3d at 1369 (citing *Milkovich*, 497 U.S. at 21). As the Court explained, "a determination whether petitioner lied in this instance can be made on a core of objective evidence by comparing, *inter alia*, petitioner's testimony before the OHSAA board with his subsequent testimony before the trial court." *Milkovich*, 497 U.S. at 21.

In contrast to *Milkovich*, Buchanan's characterization of the interaction as "celebrating" Charlie Kirk's death is not the kind of statement that can be proven true or false through objective evidence. Indeed, Plaintiff has not alleged any facts to demonstrate that Buchanan's opinion was false. *See* Complaint ¶ 14 (failing to offer any fact whatsoever to support the conclusory allegation that Buchanan's statement was false). Attributing a mental state, emotional motivation, or inward sentiment to another person is by its nature a subjective interpretation of conduct — not a verifiable

fact. "[A] defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of fact" or "rhetorical hyperbole that cannot reasonably be interpreted as stating actual facts about an individual." *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quotations and citations omitted).

Whether employees were *inwardly celebrating* Kirk's murder — what was in their hearts and minds — cannot be proven true or false through objective evidence in the way perjury, fraud, or financial misconduct can. It requires proving subjective intent, which courts have repeatedly treated as more opinion-like than factual assertions. The Eleventh Circuit addressed this directly in *Turner*. There, a report concluded that a football coach had engaged in "homophobic taunting" of a player based on the undisputed fact that the coach had given the player a male blow-up doll. 879 F.3d at 1270. The court held the statement was non-actionable opinion, reasoning that the "classification of Turner's gift . . . as homophobic taunting is subjective and not readily capable of being proved true or false." *Id.* The same reasoning applies here. The undisputed facts of what occurred are that an employee said she liked a customer's shirt and laughed with coworkers. Whether those employees were *inwardly celebrating* a man's murder — what was in their hearts — cannot be proven or disproven through objective evidence. It requires proving a subjective emotional state, which courts have consistently treated as opinion rather than fact. *See also Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1372 (S.D. Fla. 2006) (characterization of basketball player as a "thug" not actionable under Florida law).

Buchanan's use of the word "openly" reinforces that his statement was his

characterization of the underlying conduct. In *Turner*, the coach's conduct was entirely observable and undisputed: he gave a player a blow-up doll. No one contested what he did. What the Eleventh Circuit found non-verifiable was the characterization of what that visible, public act meant — whether it constituted "homophobic taunting." 879 F.3d at 1270. The same principle governs here. Buchanan observed conduct that was, by definition, "open" and visible — an employee admiring a shirt, employees laughing together. He then characterized what that visible conduct meant. Whether openly observable conduct of that kind constitutes "celebrating a murder" is no more susceptible of objective proof than whether giving someone a blow-up doll constitutes homophobic taunting. In both cases, the observable facts are not in dispute. What is disputed is the characterization of what those facts signify — and that question, under *Turner* and the cases that follow it, belongs to the domain of opinion, not fact. Indeed, "openly" reinforces rather than undermines the opinion analysis: Buchanan was transparent that he was characterizing conduct he personally witnessed, not reporting a hidden fact he had uncovered through investigation. A reader encountering that word understands that Buchanan saw something and drew a conclusion from it — which is precisely the posture of a person expressing an opinion, not asserting a verified fact.

Whether a statement of praise for a shirt associated with Charlie Kirk's murder is celebratory or not is similarly a characterization of mental state and opinion, not subject to being proven or disproven. *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984) (under Florida law, "[a] false statement of fact is

10

the sine qua non for recovery in a defamation action.") (quoting *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. Dist. Ct. App. 1983)); *see also Wilkow v. Forbes*, Inc., 241 F.3d 552, 555 (7th Cir. 2001) (A statement is not actionable "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts."). Plaintiff would have to gather evidence to prove, and then persuade a jury, that Defendant Buchanan's characterization of the undisputed facts was "false." Such a determination is impossible.

These two points — that Buchanan disclosed his full factual predicate, and that "celebrating" is a subjective characterization of observable conduct incapable of objective verification — are independently sufficient to defeat the claims, but they are also mutually reinforcing in a way that forecloses any remaining path for Plaintiff. To survive this motion on the opinion issue, Plaintiff would need to show both that Buchanan implied undisclosed defamatory facts and that his characterization is susceptible of being proven objectively true or false. It can establish neither. It cannot show undisclosed facts because paragraph 16 of its own Complaint quotes Buchanan's full disclosure verbatim. And it cannot show objective verifiability because no court or jury could peer into the minds of the employees and determine whether their laughter reflected genuine celebration of a man's death or something else entirely. When a statement rests on fully disclosed facts and characterizes a subjective mental state, it falls at the furthest possible remove from actionable defamation. That is where Buchanan's post sits.

Moreover, the context of the statement confirms that it is opinion. The inquiry into opinion requires courts to consider the broader social and communicative context of the challenged statement. *Ford v. Rowland*, 562 So. 2d 731, 735 (Fla. Dist. Ct. App. 1990); *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1178 (Fla. Dist. Ct. App. 2003) ("A determination of whether these words constitute slander must be made by considering the context in which the words were spoken."). A Facebook post in a local community forum, published in the immediate and politically volatile aftermath of a nationally prominent political killing, on the day before the victim's funeral, is exactly the kind of heated public commentary that courts treat with the greatest First Amendment solicitude. The death of Charlie Kirk was, at the moment of Buchanan's post, among the most politically charged events in the country. Readers encountering Buchanan's post in that context — on a local Facebook group, days after the killing — would understand they were reading one person's agitated reaction to a politically sensitive incident, not a formal, verified factual report. *See also R.A.V. v. St. Paul*, 505 U.S. 377, 414 (1992) (White, J., concurring in the judgment) ("The mere fact that expressive activity causes hurt feelings, offense, or resentment does not render the expression unprotected.").

In short, statements that "cannot reasonably be interpreted as stating actual facts about an individual" cannot be the subject of a defamation suit. *Milkovich*, 497 U.S. at 20. Because Buchanan's post disclosed the full factual predicate for his interpretation, characterized a non-verifiable mental state, appeared in a context that no reasonable reader would treat as a factual news report, and employed the kind of

rhetorical expression that has long been protected from defamation liability, the statement is protected opinion as a matter of law. The defamation claims fail at the threshold and should be dismissed.

## II.   BUCHANAN'S STATEMENT WAS NOT "OF OR CONCERNING" THE PLAINTIFF.

A minimum threshold for a defamation claim is that the alleged statement must have been made about the plaintiff. A cause of action for defamation "cannot be maintained unless it is shown that the libelous statements are 'of and concerning' the plaintiff." *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 805 (Fla. Dist. Ct. App. 1997); *see Rosenblatt v. Baer*, 383 U.S. 75 (1966).

Buchanan's post refers only to unspecified employee conduct. The Complaint is brought by AIC Fernandina, LLC — a corporate entity. Buchanan's post stated that "employees of Amelia island coffee" were celebrating a murder. It said nothing about the LLC itself, its owners, its management, its policies, or its institutional practices. The post does not attribute the conduct to the business as an institution; it speaks only of an emotional reaction of unnamed individuals who happen to work there. A statement about employee conduct, without more, does not defame the employing entity.

Florida appellate courts have addressed this precise issue. *McIver v. Tallahassee Democrat, Inc.*, 489 So. 2d 793 (Fla. Dist. Ct. App. 1986), held that a newspaper could not be held liable by a plaintiff corporation, Southeastern Realty and Investment Properties, for statements it made about the corporation's President, McIver,

13

suggesting that he had offered a bribe to a city commissioner. *McIver*, 489 So. 2d at 794. The Court affirmed the lower court's decision and emphasized that "the trial court was able to determine that the entire substance of the publication about the alleged incident was the presumed unlawful action by the individual McIver. Southeastern is mentioned only when McIver is identified as its president in connection with McIver's testimony before a grand jury." *Id.* at 794. The Court went on to highlight that "[i]t does not appear even by implication that Southeastern or its management was associated with the reported information relative to bribery." *Id.*

The exact same principle applies here. The Complaint does not allege that Buchanan suggested the owners endorsed, encouraged, or were even aware of the conduct he described. It does not allege that he attributed the conduct to any business policy or practice of Amelia Island Coffee as a company. The LLC cannot bootstrap a claim from a statement directed at a subset of its workforce, particularly where the statement makes no suggestion that the conduct reflects on the business's ownership, management, or institutional character. Buchanan's statement does not defame the *entity* because it attributes only a subjective emotional reaction to unnamed individuals — not a statement about the LLC's character, policies, products, management, or institutional conduct.

## III.    THE COMPLAINT FAILS TO SUFFICIENTLY ALLEGE FALSITY.

Falsity is an indispensable element of a defamation claim, *Byrd*, 433 So. 2d at 595 ("A false statement of fact is the sine qua non for recovery in a defamation action."), and the Complaint does not adequately plead it. *Jews for Jesus*, 997 So. 2d

14

at 1106 (identifying the essential elements to a defamation claim, including falsity). To survive judgment on the pleadings, the Complaint must allege facts — not conclusions — demonstrating that Buchanan's statement was objectively false. *See Thomas v. Hillsborough Cty. Sheriff's Office*, 2021 U.S. Dist. LEXIS 167225, at *10-11 (M.D. Fla. Sept. 2, 2021) ("Plaintiffs allegations must contain more than conclusory allegations or a formulaic recitation of the elements of a claim."). It does not.

The Complaint's falsity allegation rests entirely on the assertion that no employee made any statement about Charlie Kirk. Complaint ¶ 15. But this framing misidentifies what Buchanan actually said. His post did not claim that any employee mentioned Charlie Kirk by name. His claim was that employees were celebrating Kirk's murder — a characterization of what their conduct *meant*, not a quotation of what they said. The Complaint concedes every underlying fact on which that characterization rested: a customer entered wearing a blood-spattered shirt bearing the words "Problem Solved" the day before Charlie Kirk's funeral; an employee stopped the customer to express admiration for the shirt; and the employees laughed together. Complaint ¶¶ 9-10, 16. These facts are not alleged to be false. The Complaint disputes only Buchanan's interpretation of them.

A dispute about what observed events mean is not an allegation of falsity in the legally cognizable sense. *Turner*, 879 F.3d at 1270. Plaintiff's theory requires the Court to accept that there is an objectively correct answer to the question of what the employees' conduct signified — and that Buchanan's answer was demonstrably wrong. But the Complaint offers no factual basis for that conclusion. It pleads no facts

15

about the employees' actual state of mind, their awareness of Kirk's death, their political views, or any other objective fact that would render Buchanan's characterization provably and demonstrably false. The conclusory assertion that the statement was false, untethered from any supporting factual allegation, cannot sustain the claim.

## IV. THE COMPLAINT FAILS TO ADEQUATELY ALLEGE THE REQUIRED FAULT.

Defamation claims brought by a private plaintiff under Florida law also require, at minimum, that the defendant acted "negligently on a matter concerning a private person" in making the challenged statement. *Jews for Jesus*, 997 So. 2d at 1106. The Complaint does not adequately plead even that threshold showing. Florida defamation law requires a plaintiff to prove fault. Negligence must be shown even when a private plaintiff is suing a non-media defendant and the statement at issue is defamatory "per se." *See Log Creek, LLC v. Kessler*, 717 F. Supp. 2d 1239, 1247-50 (N.D. Fla. 2010) (discussing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749 (1985), and *Rapp*, 997 So. 2d at 1106, and concluding that Florida requires a private plaintiff to prove fault against media and nonmedia defendants). As these courts have noted, the First Amendment precludes the imposition of "liability without fault" in a defamation action, *Gertz*, 418 U.S. at 347, and requires the private individual plaintiff to produce "evidence of some fault on the part of a defendant publishing defamatory material." *Time, Inc. v. Firestone*, 424 U.S. 448, 461 (1976).

The Complaint alleges only in a conclusory fashion that Buchanan "knew or

16

should have known of its falsity" and "was reckless or negligent in determining the falsity of the statement." Complaint ¶¶ 26, 31. These are bare recitations of the legal standard. They identify no specific conduct by Buchanan that was unreasonable, no information available to him that he failed to consult, no warning he ignored, and no step a reasonable person would have taken before posting that he failed to take. Under *Iqbal*, a pleading that does no more than recite the elements of a cause of action in conclusory terms does not state a plausible claim for relief. 556 U.S. at 678.

Instead, the facts that the Complaint does allege affirmatively undermine any negligence inference. Buchanan was personally present in the coffee shop and witnessed the interaction he described. Complaint ¶ 11. A person who characterizes events he personally observed is not acting negligently in the relevant sense — even if his interpretation of those events is disputed. Negligence in the defamation context requires some failure of reasonable care in ascertaining the truth: publishing without verification, ignoring available contradicting information, or acting in disregard of obvious red flags. *See Gertz*, 418 U.S. at 347-48. None of those conditions is alleged here. The Complaint identifies no information Buchanan had access to that would have revealed his characterization to be wrong, no person who warned him before he posted, and no readily available facts he chose to overlook. It pleads only that he was wrong — and being wrong, without more, is not negligence.

## V.    PLAINTIFF'S DEFAMATION PER SE CLAIM IS INADEQUATELY PLED.

Count Two purports to assert defamation per se — a theory under which damages are presumed without specific proof of harm. Under Florida law, a statement

17

qualifies as defamation per se only if it falls within one of a narrow set of recognized categories. *Richard v. Gray*, 62 So. 2d 597, 598 (Fla. 1953) (explaining that statements are defamation *per se* when "considered alone without innuendo, [they contain] (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, disgust, ridicule, contempt or disgrace, or (4) injure a person in his trade or profession"); *see also Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015) (applying Florida law). Buchanan's statement does not fall within any of them.

The Complaint rests its per se theory on the assertion that Buchanan's post tends to subject Amelia Island Coffee to "hatred, distrust, ridicule, contempt or disgrace" and to injure it in its trade. Complaint ¶ 32. But those phrases describe the consequence of a statement, not its character — and not every statement that generates negative public reaction qualifies as per se defamatory. The categories of per se defamation are construed narrowly and have historically required that the statement impute a specific kind of disqualifying conduct: criminal behavior, professional dishonesty, or conduct fundamentally incompatible with the nature of the plaintiff's business. *See Richard*, 62 So. 2d at 598. Buchanan's post imputes no criminal act to the Plaintiff — the employees are not accused of any crime. It imputes no professional incompetence — nothing in the post suggests the coffee shop brews bad coffee or mistreats customers in any commercial sense. Buchanan's statement only identifies a political or emotional reaction to a news event by employees, not by the coffee shop. Political expression or

18

sentiment — even if offensive to customers — is not the kind of conduct incompatible with the operation of a food service business in the per se sense.

## VI. THE COMPLAINT FAILS TO PLAUSIBLY ALLEGE ACTUAL DAMAGES.

Even setting aside the deficiencies above, the Complaint's damages allegations are facially insufficient. A plaintiff claiming defamation must plead actual damages with enough specificity to establish a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Conclusory assertions of harm, untethered to specific facts, do not suffice.

The Complaint alleges that Amelia Island Coffee "has suffered and will continue to suffer . . . significant actual monetary damages to its business in loss of revenues and profits due to loss of customers." Complaint ¶ 19. This is precisely the kind of formulaic, conclusory damages allegation that *Iqbal* and *Twombly* held to be insufficient. "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not do. *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Though detailed factual allegations are not required to satisfy this standard, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, allegations showing "[t]he mere possibility the defendant acted unlawfully [are] insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009). The Complaint identifies no specific revenue figures, no identifiable customers who were lost, no time period over which

losses were measured, and no baseline against which any decline could be measured. It offers no factual content from which the Court could assess whether the alleged harm is plausible as opposed to merely possible.

The Complaint's reliance on select third-party Facebook comments as evidence of harm compounds the problem. The comments quoted in paragraph 17 — expressions of disgust, calls for boycotts, and demands for video evidence — are the reactions of third parties whose connection to any actual reduction in Amelia Island Coffee's revenues is entirely speculative. The Complaint pleads no facts linking those comments to any actual loss of business. Without more, the damages allegations do not cross the line from conceivable to plausible and cannot sustain the claim.

## CONCLUSION

For the foregoing reasons, Defendant Blake F. Buchanan respectfully requests that the Court grant judgment on the pleadings in his favor on all counts, with prejudice, and award any other relief the Court deems appropriate.

Dated: April 21, 2026              Respectfully submitted,

*/s/ Abigail A. Southerland*
Abigail A. Southerland
(TN Bar No. 026608)
American Center for Law & Justice
625 Bakers Bridge Ave, Suite 105-121
Franklin, TN 37067
Telephone: 615-599-5572
asoutherland@aclj.org

Nathan Moelker
(VA Bar No. 98313)
201 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 546-8890
Facsimile: (202) 546-9309
nmoelker@aclj.org

Jane Serene Raskin
(FL Bar No. 0848689)
RASKIN & RASKIN, PA
 2525 Ponce de Leon Boulevard
Suite 300
Coral Gables, Florida 33134
Tel: (305) 444-3400
Cell: (305) 978-5410

1701 Pennsylvania Avenue
Suite 200
Washington, D.C. 20006
 jraskin@raskinlaw.com

*Counsel for Defendant*

21

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on April 21, 2026, he caused a copy of the foregoing Defendant's Motion for Judgment on the Pleadings to be e-filed using the CM/ECF e-filing system which will serve all parties of record.

<u>*/s/ Abigail A. Southerland*</u>

22